| UNITED STATES DISTRICT COURT | | EASTERN DISTRICT OF TEXAS |
|---|---|---|

| | | |
|---|---|---|
| BRITTANY MORRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:22-CV-227 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant United States of America's (the "Government") Motion to Dismiss Plaintiff Brittany Morris's ("Morris") First Amended Complaint (#22), wherein the Government contends that this court lacks subject matter jurisdiction to consider Morris's claims. Specifically, the Government avers that the Federal Tort Claims Act's ("FTCA") discretionary function exception applies to the conduct at issue in this case. Morris filed a response (#23) in opposition to the Government's motion. The Government then filed a reply (#26), and Morris filed a sur-reply (#27). Having considered the motion, the parties' submissions, the pleadings, and the applicable law, the court is of the opinion that, because Morris's complaint relies primarily on a statute—18 U.S.C. § 3603(8)(B)—that, as pleaded, is inapplicable to her case, the Government's motion should be granted in part, and Morris's complaint should be dismissed to the extent that it relies on § 3603(8)(B).

I.  Background

The unfortunate events underlying this action relate to Morris's relationship with Rondell Malveaux ("Malveaux"). Malveaux, Morris's ex-boyfriend, has an extensive criminal history, which began at age 14. His criminal activities—relevant to this action—date back to 2010. In

June of that year, a grand jury in the Eastern District of Texas returned a one-count Indictment charging Malveaux with illegal receipt of a firearm by a person under indictment, in violation of 18 U.S.C. § 922(n).  Three months later, Malveaux pleaded guilty to the one-count Indictment. On March 22, 2011, Malveaux was sentenced to 37 months' imprisonment, to be followed by three years of supervised release.  Six weeks later, Malveaux was sentenced in state court for possession of cocaine and aggravated assault against a public servant.  Because his state and federal sentences did not run concurrently, Malveaux did not begin his three-year term of supervised release until November 2016.  Upon release, Malveaux was supervised by the United States Probation and Pretrial Services Office in the Eastern District of Texas and was assigned to United States Probation Officer Beverly Matt ("Matt").

Because Malveaux was having difficulty complying with the terms of his release, the conditions of his supervised release were modified, with his consent, to require him to live in a residential reentry facility until November 27, 2019.  Near the end of his term of supervised release, on Thursday, August 1, 2019, Malveaux left the reentry facility without authorization—a blatant violation of the conditions of his supervised release.  Malveaux called Morris and "ask[ed] her to come pick him up from the reentry facility."  Instead of immediately assisting Malveaux, Morris called Matt and informed her that Malveaux had abandoned the reentry facility and was in violation of the conditions of his supervised release.[1]  By the end of her phone call with Morris, Matt had concluded that she should request that a warrant be issued for Malveaux's arrest[2] and

---

[1] It is not clear, according to the complaint, whether Morris later assisted Malveaux by picking him up from the reentry facility.

[2] Matt's conclusion was based on Malveaux's leaving the reentry facility along with his previous probation violations.  Specifically, Malveaux had tested positive for phenylcyclohexyl piperidine ("PCP") on three prior occasions.

assured Morris that one "would issue." Morris now acknowledges that "Matt was not empowered to issue a warrant" and did not "have authorized discretion to guarantee [that] one would issue." Nonetheless, at the time, "Morris was not aware of that," and she "trusted [Matt's] assurance." The next day, Friday, August 2, Matt filed a petition requesting that a warrant be issued for Malveaux's arrest. No warrant, however, was issued that day, nor was one issued over the weekend.

Soon after Matt assured Morris that a warrant would be issued for Malveaux's arrest, Malveaux began to "harass" Morris. In the early morning hours of Sunday, August 4, 2019, Malveaux broke into Morris's home, and Morris, accompanied by one of her friends, "caught [Malveaux] in the act." In response, Malveaux "assault[ed] Morris'[s] friend and threaten[ed] to kill Morris." Malveaux was able to "escape," and, shortly thereafter, he "called Morris to taunt her that he had stolen $800 and her iPhone." After contacting both the Beaumont and Port Arthur Police Departments (and informing them of Malveaux's location based upon Morris's "find my iPhone" data), Morris, once again, called Matt.

Morris informed Matt that Malveaux had broken into her home and specifically stated that Malveaux had assaulted her friend, threatened to kill Morris, and that Malveaux's location was "readily accessible." During this phone call, Morris also told Matt that Malveaux was "high on PCP." Matt then "promised Morris that a warrant would issue immediately" for Malveaux's arrest and assured Morris that she "was no longer in danger," was safe at home, and "did not need to go anywhere." Morris contends that, despite Matt's assurances, Matt did nothing to "bring Malveaux into custody, provide protection to Morris, or ensure a warrant would issue so that other

3

law enforcement . . . could act." As such, relying on Matt's assurances, "Morris stayed in her home with her young children" in the days following Malveaux's break-in.

Two days later, on Tuesday, August 6, 2019, Malveaux again broke into Morris's home—this time, with a more evil objective. "Malveaux violently assaulted Morris." He repeatedly stabbed Morris, severing her spinal cord and "breaking the knife blade off in her body." The attack left Morris paralyzed from the neck down.

Through the FTCA, Morris asserts causes of action for both negligence and negligent undertaking. Throughout her complaint, Morris chiefly relies on 18 U.S.C. § 3603(8)(B) to contend that Matt's actions were negligent. As Morris characterizes it, § 3603(8)(B) states that, no matter the supervisee, a probation officer must "immediately report any violation of the conditions of release to the court and the Attorney General or his designee." *See* 18 U.S.C. § 3603(8)(B). In response, the Government contends that this court does not have jurisdiction to hear Morris's claims because § 3603(8)(B)'s directive is not mandatory, and, thus, the FTCA's discretionary function exception applies to Matt's conduct. Morris disagrees and describes § 3603(8)(B)'s directive as mandatory. Yet, both Morris and the Government seem to have overlooked the subpart immediately preceding § 3603(8)(B)—that is, § 3603(8)(A).

II.  Analysis

    A.  <u>Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)</u>

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the federal district court. *See* FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Home Depot U.S.A., Inc., v. Jackson*, 587 U.S. ___, 139 S. Ct. 1743, 1746 (2019) (quoting *Kokkonen v. Guardian Life Ins.*

*Co. of Am.*, 511 U.S. 375, 377 (1994)); *accord Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, 364 (5th Cir. 2022) (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001)). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen*, 511 U.S. at 377 (citations omitted)). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019) (citing *Howery*, 243 F.3d at 916); *accord Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Cleartrac, L.L.C.*, 53 F.4th at 364.

"A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009), *cert. denied*, 559 U.S. 1008 (2010); *see Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021); *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010). In ruling on such a motion, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[3] *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir.), *cert. denied*, 583 U.S. 996 (2017); *see Pickett v. Tex. Tech Univ.*

---

[3] A Rule 12(b)(1) motion may present either a "facial" or "factual" challenge to a plaintiff's complaint. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020). "A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 264. In its motion, the Government appears to assert a factual challenge. Nonetheless, because there are no disputed facts relevant for purposes of this opinion, as indicated below, the court, as it would pursuant to a facial challenge, takes Morris's pleaded allegations as true.

*Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010) (quoting *St. Tammany Parish v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir.), *cert. denied*, 558 U.S. 826 (2009). Further, as is the case here, "[t]he evaluation of the discretionary function exception . . . should be conducted under the 12(b)(1) standard as long as it does not require resolving disputed facts that overlap with the merits."[4] *Holcombe v. United States*, No. SA-18-CV-555-XR, 2021 WL 67217, at *21 (W.D. Tex. Jan. 6, 2021); *see, e.g.*, *Lopez*, 455 F. App'x at 431 (noting that the district court converted the United States' motion for summary judgment to a Rule 12(b)(1) motion and then "concluded [that] the Appellants could not state a facially plausible negligence claim that arose from a non-discretionary function.").

B. The FTCA and its Discretionary Function Exception

The United States, as a sovereign, "is immune from suit unless it has expressly waived such immunity and consented to be sued." *Hebert v. United States*, 438 F.3d 483, 487 (5th Cir. 2006); *see United States v. $4,480,466.16*, 942 F.3d 655, 663 (5th Cir. 2019); *St. Tammany*

---

[4] In this vein, although there is an issue regarding whether the statute identified by Morris actually constrained Matt's discretion, as discussed below, because "the merits of the actual cause of action—state-law negligence—are" not relevant to the court's determination of "whether the discretionary function exception of § 2680(a) divest[s] the . . . court of jurisdiction," Rule 12(b)(1) is the proper vehicle for the following analysis. *Hix v. U.S. Army Corps. of Eng'rs*, 155 F. App'x 121, 128 (5th Cir. 2005). For instance, the United States Court of Appeals for the Fifth Circuit has found that the discretionary function exception was properly analyzed under a 12(b)(1) standard, even where the court determined that there was no causal connection between the discretionary duty identified and the plaintiff's harm. *See Lopez v. U.S. Immigr. & Customs Enf't*, 455 F. App'x 427, 431 (5th Cir. 2011), *cert. denied*, 568 U.S. 817 (2012). Nonetheless, even if Morris's identification of an inapplicable statute constituted both a merits and a jurisdictional issue, in such cases a "district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6)"—"[o]r both." *See Brownback v. King*, ___ U.S. ___, 141 S. Ct. 740, 750 n.8 (2021). "The label does not change the lack of subject-matter jurisdiction, and the claim fails on the merits because it does not state a claim upon which relief can be granted." *Id*.

*Parish*, 556 F.3d at 316. Until expressly waived, sovereign immunity both "protects the United States from liability, and deprives the court of subject matter jurisdiction over the claims against it." *Hebert*, 438 F.3d at 488; *see $4,480,466.16*, 942 F.3d at 663 (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). The FTCA contains such an express waiver—it expressly "waives sovereign immunity and permits suit against the United States for monetary claims sounding in state tort law that allege negligent or wrongful acts committed by government employees." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021); *see* 28 U.S.C. § 2674; *Spotts*, 613 F.3d at 566. By waiving sovereign immunity, the FTCA allows federal courts to exercise jurisdiction over such claims. *See* 28 U.S.C. §§ 1346(b)(1), 2674; *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1317 (2019). To be actionable, the plaintiff's claim must allege the six elements of § 1346(b)—that is, the claim must be:

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Brownback*, 141 S. Ct. at 746 (quoting *FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994)). Indeed, "a plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim." *Id*. at 749; *C.M. v. United States*, No. 5:21-CV-0234-JKP-ESC, 2023 WL 3261612, at *17 (W.D. Tex. May 4, 2023).

Even then, the United States' waiver "is subject to various exceptions which preserve the United States' sovereign immunity." *Dickson*, 11 F.4th at 312 (citing *Spotts*, 613 F.3d at 566).

These exceptions are found in 28 U.S.C. § 2680, and the particular exception at issue here is "known as the 'discretionary function exception.'" *Id*. (quoting *Spotts*, 613 F.3d at 566). When a government employee's actions "were required by, or were within the discretion committed to, that employee under federal statute, regulation, or policy," "[t]he discretionary function exception withdraws the FTCA's waiver of sovereign immunity" even though his or her conduct "may have been actionable under state tort law."[5] *Id*. (quoting *Spotts*, 613 F.3d at 566); *St. Tammany Parish*, 556 F.3d at 317; *see* 28 U.S.C. § 2680(a). "At the pleading stage, [the] plaintiff must invoke the court's jurisdiction by alleging a claim that is facially outside of the discretionary function exception." *Dickson*, 11 F.4th at 312 (quoting *St. Tammany Parish*, 556 F.3d at 315 & n.3).

To allege a claim that is facially outside of the discretionary function exception, a plaintiff must identify a nondiscretionary duty and "allege facts that, if true, would demonstrate a plausible causal relationship between the nondiscretionary duty" and the alleged harm. *Lopez*, 455 F. App'x at 433 n.1; *see Spotts*, 613 F.3d at 570-71. Stated differently, a plaintiff must plausibly contend that the nondiscretionary duty identified "constrain[ed]" the government actor's "discretion."[6] *Spotts*, 613 F.3d at 570-71 ("Because the nondiscretionary duties otherwise

---

[5] The United States "Supreme Court has developed a two-part test for determining whether agency conduct qualifies as a discretionary function or duty." *Spotts*, 613 F.3d at 566 (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)); *see Dickson*, 11 F.4th at 312. "First, courts must determine whether the challenged act involves an element of judgment or choice on the part of the employee." *Dickson*, 11 F.4th at 312 (citing *Gaubert*, 499 U.S. at 322); *Spotts*, 613 F.3d at 567. "Second, even assuming the challenged conduct involves an element of judgment, and does not violate a nondiscretionary duty, we must still decide whether the judgment is of the kind that the discretionary function exception was designed to shield." *Dickson*, 11 F.4th at 312 (quoting *Spotts*, 613 F.3d at 568) (internal quotation marks omitted); *see Gaubert*, 499 U.S. at 322.

[6] The Fifth Circuit has made this point quite clear. For example, in *Lopez*, after Parada, an individual held in federal custody, died of a "heart attack precipitated by a fatal electrolyte imbalance from his malnutrition, diarrhea, and vomiting," representatives of his estate (the Appellants in *Lopez*) sued the United States under the FTCA. 455 F. App'x at 432. The representatives of Parada's estate contended,

imposed by the [SDWA] were suspended in the aftermath of the hurricane, the plaintiffs cannot rely on these duties as bases for constraining [the government actor's] discretion."); *see Lopez*, 455 F. App'x at 433 n.1; *C.M.*, 2023 WL 3261612, at *31 ("When plaintiffs lack 'any plausible basis for a constitutional violation,' they 'also lack grounds to argue for avoiding the discretionary function exception.'" (quoting *Lopez*, 455 F. App'x at 434)); *see also Dickson*, 11 F.4th at 313 (finding that the plaintiff did not meet his burden to avoid the discretionary function exception, in part, because "the regulations he generally invoke[d] [were] not pertinent to the challenged actions"); *St. Tammany Parish*, 556 F.3d at 315 n.3 ("In the context of a motion to dismiss, . . . the courts have widely held that the plaintiff must invoke jurisdiction by pleading facts that facially allege matters outside of the discretionary function exception.").

Thus, even assuming *arguendo* that 18 U.S.C. § 3603(8)(B) imposes a nondiscretionary duty upon probation officers, Morris must allege facts that, if true, would demonstrate a plausible

---

among other things, that the United States Marshals Service ("USMS") "violated its own nondiscretionary policies in both failing to inspect [the correctional facility] and failing to oversee the facility's medical care." *Id*. The Fifth Circuit held that "the USMS inspection directive did not impose a 'nondiscretionary' duty to inspect [the correctional facility]." *Id*. at 433. Importantly, however, the court also determined that "even if [it] assume[d] the USMS directive imposed a nondiscretionary duty to inspect [the correctional facility] . . . and further assume[d the] USMS somehow breached the duty, Appellants *had to* allege facts that, if true, would [have] demonstrate[d] a *plausible causal relationship* between the nondiscretionary duty and Parada's death." *Id*. at 433 n.1 (emphasis added). Thus, the court did not need to reach the nondiscretionary question; it could have simply determined that there was no causal connection between the alleged nondiscretionary duty and the harm. *See id*. In a similar vein, in *Spotts*, inmates who were held in the Federal Correctional Complex, United States Penitentiary, in Beaumont, Texas, during Hurricane Rita sued under the FTCA, contending, *inter alia*, that the Regional Director's "decision not to evacuate after the storm violated nondiscretionary duties imposed by the Safe Drinking Water Act ["SDWA"], 42 U.S.C. §§ 300f *et seq.*, which sets out national drinking water regulations for public water systems in each state." 613 F.3d at 570. The Fifth Circuit held that, although the duties imposed by the SDWA were "nondiscretionary," because these duties "were suspended in the aftermath of the hurricane, the plaintiffs [could not] rely on these duties as bases for constraining [the Regional Director's] discretion." *Id*. at 570-71. In other words, because there was no plausible causal relationship between the nondiscretionary duty and the harm, the plaintiffs were unable to circumvent the discretionary function exception and invoke the court's jurisdiction.

causal relationship between that nondiscretionary duty and her alleged harm. Upon reviewing the parties' submissions, however, it is apparent that the parties have overlooked this requirement. Both Morris and the Government appear to assume that § 3603(8)(B)'s directive governed Matt's conduct in this case. Much of their briefing is dedicated to disputing whether § 3603(8)(B)'s directive is mandatory or discretionary. Nevertheless, for Morris to invoke this court's jurisdiction and establish that the discretionary function exception does not apply in her case, she must plausibly show that the statute upon which she relies actually "constrain[ed]" Matt's "discretion." *See Spotts*, 613 F.3d at 571. Thus, the viability of Morris's complaint, to the extent that it relies on § 3603(8)(B), depends on whether that statute actually governed Matt's supervision of Malveaux.

C.  Interpreting 18 U.S.C. § 3603(8)(B)

Morris, in her Amended Complaint, has homed in on 18 U.S.C. § 3603(8)(B) and contends that the statute imposed upon Matt a nondiscretionary duty. Her focus on § 3603(8)(B) is quite understandable.[7] When § 3603(8)(B) is read as a stand-alone statutory provision, its directive appears to be sweeping: A probation officer shall "immediately report any violation of the conditions of release to the court and the Attorney General or his designee." 18 U.S.C. § 3603(8)(B). Both Morris and the Government seem to assume that § 3603(8)(B)'s directive applies to release violations committed by any supervisee. From this perspective, the parties disregard the overriding question regarding § 3603(8)(B)'s application: To whom does this

---

[7] In fact, Morris is not the first plaintiff to assume that § 3603(8)(B)'s directive applies to all release violations committed by any supervisee. *See, e.g.*, *United States v. Jennings*, 652 F.3d 290, 302-03 (2d Cir. 2011).

provision actually apply? As discussed below, § 3603(8)(A) provides the answer, as § 3603(8)(B) cannot be singled out and separated from § 3603(8)(A).

To determine a statute's meaning, courts "begin, as always, with the text of the statute." *United States v. Palomares*, 52 F.4th 640, 642 (5th Cir. 2022); *see In re DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019) (noting that, "[i]n matters of statutory interpretation, text is always the alpha," and it is often "also the omega"). Courts, however, "do not look at a word or a phrase in isolation," as "[t]he meaning of a statutory provision 'is often clarified by the remainder of the statutory scheme . . . .'" *Palomares*, 52 F.4th at 642-43 (quoting *Ramos-Portillo v. Barr*, 919 F.3d 955, 960 (5th Cir. 2019)). The text must be considered "holistically, accounting for the 'full text, language as well as punctuation, structure, and subject matter.'" *Id.* at 643 (quoting *Elgin Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 718 F.3d 488, 494 (5th Cir. 2013)). In full, § 3603(8) states that a probation officer shall:

> (A) when directed by the court, and to the degree required by the regimen of care or treatment ordered by the court as a condition of release, keep informed as to the conduct and provide supervision of a person conditionally released under the provisions of section 4243, 4246, or 4248 of this title, and report such person's conduct and condition to the court ordering release and to the Attorney General or his designee; and
>
> (B) immediately report any violation of the conditions of release to the court and the Attorney General or his designee;

18 U.S.C. § 3603(8).[8]

---

[8] Section 3603, in full, provides as follows:

A probation officer shall—

> (1) instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions;

Upon reading § 3603(8) in full, it is clear that subsection (8) contains two subparts—(A)

> (2) keep informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of a probationer or a person on supervised release, who is under his supervision, and report his conduct and condition to the sentencing court;
>
> (3) use all suitable methods, not inconsistent with the conditions specified by the court, to aid a probationer or a person on supervised release who is under his supervision, and to bring about improvements in his conduct and condition;
>
> (4) be responsible for the supervision of any probationer or a person on supervised release who is known to be within the judicial district;
>
> (5) keep a record of his work, and make such reports to the Director of the Administrative Office of the United States Courts as the Director may require;
>
> (6) upon request of the Attorney General or his designee, assist in the supervision of and furnish information about, a person within the custody of the Attorney General while on work release, furlough, or other authorized release from his regular place of confinement, or while in prerelease custody pursuant to the provisions of section 3624(c);
>
> (7) keep informed concerning the conduct, condition, and compliance with any condition of probation, including the payment of a fine or restitution of each probationer under his supervision and report thereon to the court placing such person on probation and report to the court any failure of a probationer under his supervision to pay a fine in default within thirty days after notification that it is in default so that the court may determine whether probation should be revoked;
>
> (8)(A) when directed by the court, and to the degree required by the regimen of care or treatment ordered by the court as a condition of release, keep informed as to the conduct and provide supervision of a person conditionally released under the provisions of section 4243, 4246, or 4248 of this title, and report such person's conduct and condition to the court ordering release and to the Attorney General or his designee; and
>
> (B) immediately report any violation of the conditions of release to the court and the Attorney General or his designee;
>
> (9) if approved by the district court, be authorized to carry firearms under such rules and regulations as the Director of the Administrative Office of the United States Courts may prescribe; and
>
> (10) perform any other duty that the court may designate.

18 U.S.C. § 3603.

and (B)—and these two subparts must be read together. Subpart (A) establishes the duties and obligations of probation officers supervising "a person conditionally released under the provisions of section 4243, 4246, or 4248 of" Title 18.[9] *Id*. § 3603(8)(A). These supervisees are persons who have been "found not guilty only by reason of insanity," *id*. § 4243, who are "due for release but suffering from mental disease or defect," *id*. § 4246, or who are "sexually dangerous," *id*. § 4248.[10] Subpart (A), along with requiring probation officers to supervise these individuals, requires that probation officers "keep informed as to the conduct" of such a person and "report such person's conduct and condition to the court ordering release and to the Attorney General or his designee." *Id*. § 3603(8)(A). Section 3603(8)'s demands, however, do not end there. Subpart (B) is joined to subpart (A) with the word "and." Subpart (B) then requires that the supervising probation officer "immediately report any violation of the conditions of release to the court and the Attorney General or his designee." *Id*. § 3603(8)(B).

"The ordinary meaning of 'and,'" which § 3603(8) uses to join subparts (A) and (B), "is conjunctive." *Palomares*, 52 F.4th at 643; *see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 116 (2012) ("Under the conjunctive/disjunctive canon, and combines items while or creates alternatives."). Subsection (8) simply uses the word "and" to combine probation officers' list of obligations regarding supervising individuals who

---

[9] Subpart (A)'s qualifying clauses, "when directed by the court" and "to the degree required by the regimen of care or treatment ordered by the court as a condition of release," inform the extent to which a probation officer is to "keep informed as to the" conditionally released individual's conduct and supervise him or her under the applicable statutes. These clauses also inform a probation officer's reporting requirement, as a probation officer is, of course, only able to "report such person's conduct and condition" to the extent that the officer is aware of such conduct.

[10] As part of the First Step Act of 2018, § 4248 was incorporated into § 3603(8). First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5245 (2018).

13

have been conditionally released under the provisions of § 4243, § 4246, or § 4248. *See* SCALIA & GARNER, *supra*, at 116 (noting that, with a conjunctive list, all items are ordinarily required); *see also* 1A NORMAN SINGER & SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 21:14 (7th ed. 2022) ("Where two or more requirements are provided in a section and it is the legislative intent that all of the requirements must be fulfilled to comply with the statute, the conjunctive 'and' should be used."). Hence, continuing with probation officers' list of obligations while supervising individuals conditionally released under the provisions of § 4243, § 4246, or § 4248, subpart (B) requires that probation officers also immediately report any violation of the conditions of release for these individuals. 18 U.S.C. § 3603(8)(B).

Further, because subsection (8) consists of two subparts joined together, subpart (B) should not be read in isolation. It should be read in context, as a proper reading of subpart (B) is informed by the qualifications set forth in subpart (A). In other words, subpart (A) must modify subpart (B). *See Cargill v. Garland*, 57 F.4th 447, 461 (5th Cir. 2023) ("With statutes, '[c]ontext is a primary determinant of meaning.'" (quoting SCALIA & GARNER, *supra*, at 167)); *see also Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("[W]e construe language . . . in light of the terms surrounding it."); *cf. All. to End Repression v. City of Chicago*, 742 F.2d 1007, 1013 (7th Cir. 1984) ("It is a great fallacy to think that by staring hard at an isolated sentence one can come up with a meaningful interpretation. The sentence may look clear and yet if one understood its background and context one might read it quite differently from its superficially clear meaning."). Subpart (A), which is grammatically linked to subpart (B) and "is of quite limited application," restricts subpart (B)'s application. *See Jennings*, 652 F.3d at 303. As such, a probation officer

14

must "immediately report" only those violations committed by individuals conditionally released under § 4243, § 4246, or § 4248.[11]

This understanding is confirmed by reading § 3603 in full.[12]  *See* SCALIA & GARNER, *supra*, at 167 ("[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

---

[11] Because § 3603(8)'s language is not ambiguous, this court "need not consult legislative history." *Heinze v. Tesco Corp.*, 971 F.3d 475, 484 (5th Cir. 2020) ("Of course, when 'a statute's text is clear, courts should not resort to legislative history.'" (quoting *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019))). Nevertheless, as the United States Court of Appeals for the Second Circuit pointed out in *Jennings*, subsection (8)'s "legislative history suggests that its purpose was to 'give Probation . . . Officers[ ] specific authority for follow-up services under the Insanity Defense Reform Act.'" 652 F.3d at 302-03 (quoting H.R. REP. No. 102-1006(I), at 26 (Oct. 3, 1992), *reprinted in* 1992 U.S.C.C.A.N. 3921, 3935).
  In *Jennings*, citing § 3603(8)(B), the petitioner argued that his indictment should have been dismissed because his probation officer "violated a statutory requirement that he report any violation of a supervised-release term to the court 'immediately.'" *Id.* at 301-02. Although the Second Circuit did not affirmatively determine whether § 3603(8)(B) applied in *Jennings*, the court noted that it saw "no indication that subpart (B) of subsection (8), whose subpart (A) is of quite limited application, was intended to apply to other subsections of § 3603." *Id.* at 303.

[12] One additional point, however, is worthy of note with respect to the word "and" and the full text of § 3603. Section 3603 consists of ten subsections that are separated by semicolons and are written in a conjunctive list (1; 2; 3; 4; 5; 6; 7; 8; 9; and 10). Subsection 8 is the only subsection that contains subparts (8(A); and (B)). That said, there are two uses of the word "and" following a semicolon in this section. As indicated above, subsection (8)'s subparts cannot properly be read independently—they must be read together. Nonetheless, the use of "and" to join subsection (8)'s subparts, in effect, creates a separate conjunctive list. *See, e.g.*, *Palomares*, 52 F.4th at 650 (Oldham, J., concurring). Thus, the additional "and" clarifies that § 3603(8)(B) is not part of the larger list independent of § 3603(8)(A). Further, the statute begins with a prefatory clause ("A probation officer shall"), followed by an em dash. "An em dash signifies that the clause that immediately precedes the dash applies to all of the items that follow." *United States v. Nazerzadeh*, 73 F.4th 341, 344 (5th Cir. 2023) (quoting *Palomares*, 52 F.4th at 643), *cert. denied*, ___ S. Ct. ___ , No. 23-364, 2023 WL 7475207 (Nov. 13, 2023). As such, § 3603's prefatory clause is distributed to each subsection—subsections (1) through (10). Because § 3603(8)(B) is not independently a part of the overall list, however, the prefatory clause is not distributed directly to subpart (B) (as would be required for subpart (B)'s directive to apply to all supervisees). *Cf. Palomares*, 52 F.4th at 651-52 (Oldham, J., concurring). The prefatory clause must be distributed to subsection (8) as a whole. Indeed, the prefatory clause distributes to subpart (B) only after passing through subpart (A) and dragging with it the qualifications (or, rather, the limitations) specified in that subpart. As a result, a probation officer's duty, as it relates to subpart (B), can only be understood by reading all of subsection (8)—starting with subpart (A).

Section 3603 deals with the supervision of three distinct groups of people—individuals on probation, supervised release, and conditional release. *See* 18 U.S.C. § 3603; *see also* 8E GUIDE TO JUDICIARY POLICY § 160.20 ("The statutory duties of probation officers are set forth at 18 U.S.C. § 3603" and "require officers . . . to provide supervision of any *probationer* or *supervised releasee* known to be in the district and of *persons on conditional release* . . . ." (emphasis added)). Subsection (2) of § 3603 requires probation officers to "keep informed" and "report" the conduct of supervised releasees and probationers with respect to the "conditions specified by the sentencing court." 18 U.S.C. § 3603(2).[13] Subsection (8), as noted above, requires probation officers to "keep informed" and "report" the conduct of individuals conditionally released under specific provisions of Title 18. *Id*. § 3603(8). It is of no surprise that § 3603(8)(B) imposes an additional duty by which it mandates immediacy with respect to reporting only those violations committed by individuals conditionally released, rather than probationers and supervised releasees—conditional release is a different form of supervision with its own unique policy considerations. *See* 8E GUIDE TO JUDICIARY POLICY § 160.10.40(a) ("The Federal Courts Administration Act of 1992 authorized probation officers to supervise persons conditionally released under the provisions of 18 U.S.C. §§ 4243 . . . and . . . 4246[14] . . . . Unlike probation, supervised release, or parole, conditional release is a civil rather than criminal form of supervision."). It appears that Congress imposed an additional, more stringent reporting requirement upon those probation officers supervising individuals with certain mental illnesses.

---

[13] Subsection (7) contains similar requirements but also explicitly requires that probation officers keep informed concerning probationers' compliance with conditions ordering "the payment of a fine or restitution." *Id*. § 3603(7).

[14] Section 4248, as noted above, was not added until 2018. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5245 (2018).

Furthermore, as the Second Circuit noted in *Jennings*, "[i]f Congress had intended to require immediacy with respect to every report of a supervised-release violation by any supervisee, we would have expected that requirement to be set out in each subsection requiring a report or in a subsection of its own, rather than as a subpart of one subsection."[15] 652 F.3d at 302.

Moreover, the Guide to Judiciary Policy ("Guide") (cited and attached to Morris's response) recognizes that subparts (A) and (B) must be read in harmony. In fact, when citing § 3603(8), the Guide does not separate out the subparts as they are found in the United States Code. 8E GUIDE TO JUDICIARY POLICY § 160.20(a)(8). Rather, the Guide combines the two subparts in one paragraph, including the duty to report immediately violations of the conditions of release as an additional duty required when supervising individuals conditionally released under the specified provisions of Title 18 identified above. *See id*. Significantly, the Guide notes that "[t]he statutory authority to provide supervision to offenders with mental health disorders is contained in the following: Under 18 U.S.C. § 3603(2), (3), and (8) . . . ." *Id*. § 560.10.30.

In short, § 3603(8)(B) must be read in conjunction with § 3603(8)(A), and, as a result, the requirement to "immediately report" relates only to probation officers supervising individuals conditionally released under § 4243, § 4246, or § 4248. Section 3603(2) does not mandate

---

[15] Further, subsection (8), in both subparts (A) and (B), uses language that is found in no other subsection of § 3603. Subpart (A) refers to the "condition[s] of release," and subpart (B) refers to "violations of the conditions of release." 18 U.S.C. § 3603(8). This language is distinct from the terms used in other subsections. For example, subsection (2) refers to the "conditions specified by the sentencing court," *id*. § 3603(2), and subsection (7) refers to the "condition[s] of probation." *Id*. § 3603(7). Thus, the lack of reference to supervised release, probation, or a sentencing court appears to further clarify that § 3603(8)(B) relates only to those individuals conditionally released (as specified in subpart (A)) and does not apply to probationers or supervised releasees. Moreover, subsection (8) requires a probation officer to report to both the court and the Attorney General. *Id*. § 3603(8). Other sections that mandate reporting do not also mandate that such reports be made to the Attorney General—that requirement is implemented only with respect to those individuals conditionally released. *Compare id*., *with id*. § 3603(2), *and id*. § 3603(7).

immediate reporting from probation officers supervising individuals on supervised release or probation. Nothing in Morris's complaint suggests that Malveaux was conditionally released under § 4243, § 4246, or § 4248; rather, the complaint affirmatively asserts that he was on supervised release during the time that he attacked Morris. As a result, Morris's complaint does not demonstrate a plausible causal relationship between § 3603(8)(B) and her injury. *See Lopez*, 455 F. App'x at 433 n.1; *see also Spotts*, 613 F.3d at 571.

III. Conclusion

This opinion is limited to the applicability of 18 U.S.C. § 3603(8)(B) in this case. The court makes no determination as to the Government's other jurisdictional arguments or any of Morris's arguments in opposition or other theories of liability. Accordingly, because Morris relies on § 3603(8)(B) throughout her complaint and the statute is intertwined with the parties' pleadings, leave to amend is warranted. To that end, the Government's Motion to Dismiss Morris's First Amended Complaint (#22) is GRANTED, subject to leave to amend. Accordingly, Morris may amend her complaint to clarify her theories of liability. If Morris fails to amend her complaint within twenty-eight (28) days from the date of this order, this action will be dismissed for lack of subject matter jurisdiction.

SIGNED at Beaumont, Texas, this 14th day of December, 2023.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE